IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**RONALD WEST,**

        Petitioner,

**v.**                                       Civil Action No.: 1:16-CV-143 (KEELEY)

**JENNIFER SAAD,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On June 29, 2016, Petitioner Ronald West ("Petitioner"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On August 26, 2016, the Court entered an Order to Show Cause [ECF No. 14] why the Petition should not be granted. On September 9, 2016, Respondent filed a Motion [ECF No. 18] for an extension of time in which to file a response to the Show Cause Order. That same day, the Court entered an Order [ECF No. 19] granting Respondent's Motion and extending her deadline to September 30, 2016.[1] On September 29, 2016, Respondent filed a response to the Petition by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment [ECF No. 24]. On September 30, 2016, the Court entered an Order and Roseboro Notice [ECF No. 26], informing

---

[1] On September 22, 2016, Petitioner filed a Motion for Defense *Pro Se*, requesting that the Court review all of the evidence when analyzing the Petition, including a "camera" that he alleges is pertinent. ECF No. 23 at 2-3. However, the Court has already denied Petitioner's request for a copy of a video/camera [ECF No. 13] and Petitioner offers no new facts warranting a change of the Court's decision. Petitioner also requests in his Motion that the Court grant the Petition.

Petitioner of his right and obligation to respond to the Government's Motion. On October 14, 2016, Petitioner filed his Response [ECF No. 29]. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II.   BACKGROUND

### A.   Conviction and Sentence

In 1988, Petitioner was convicted "on nineteen counts arising out of four separate incidents [spanning] over a two-month period." West v. United States, 599 A.2d 788, 789 (D.C. 1991). In each incident, "a woman was robbed at gunpoint of her Automatic Teller Machine ("ATM") bank card or her VISA card. In three of the cases the woman was sexually molested. In one of the cases, the woman was killed." Id. The convictions included murder, armed kidnapping, armed rape, armed robbery, sodomy, theft and possession of an unregistered firearm. Decl. of Sharon Wahl, ECF No. 25-1 at 2. On September 7, 1989, Petitioner was sentenced to life in prison. Id.

### B.   Prison Disciplinary Proceedings

#### 1.   Incident Report, July 30, 2015

On July 30, 2015, a female staff member of the Federal Correctional Institution ("FCI") in Allentown, Pennsylvania, drafted an Incident Report regarding Petitioner, an inmate of the institution.[2] ECF No. 25-1 at 15. The staff member reported that:

> [W]hile recalling Education for the evening[,] [Petitioner] mocked myself when I was recalling. The Law Library was full of inmates and with a loud voice and angry look on his face mimicked me in a girly voice . . . and didn't grab his belongings and continued to do work on the computer. I

---

[2] Petitioner is currently incarcerated at the FCI in Gilmer, West Virginia. ECF No. 25-1 at 2.

2

> turned around and said, "Excuse you, I said recall and that means now". He sat at the computer refusing to leave while approximately 15 other inmates watched him refuse and make a mockery. When I asked [Petitioner] for his ID he refused to give it to me and I said, "I am ordering you to give me your ID." He refused 2 more times and then slowly took it off his neck and gave it to me when he saw me reaching for my radio. He then walked out into the Leisure Library shaking his head and mumbling something. Then he waited for me and kept asking for his ID back. I told him he could get it later from the Lieutenant, and to return to his unit to lock in. He waited for everyone else to leave the Education Department except for my last orderly. He then tried making it a joke and followed me when I locked other doors and said he was "just kidding". I told him to leave the department immediately and he then slowly walked out and mumbled under his breath and was shaking his head.

Id. The staff member then charged Petitioner with: (1) interfering with a staff member, in violation of the Bureau of Prisons' ("BOP's") Prohibited Act Code § 298; (2) conduct disruptive to the security of the institution, in violation of Prohibited Act Code § 299; (3) refusing to obey an order, in violation of Prohibited Act Code § 307 and (4) insolence toward a staff member, in violation of Prohibited Act Code § 312. Id.

That same day, a copy of the Incident Report was provided to both Petitioner and the Unit Discipline Committee ("UDC"). Id. The UDC assigned a BOP Lieutenant to investigate the charges. Id. at 16. During the investigation, the BOP Lieutenant interviewed Petitioner after informing him that he had the right to remain silent. Id. Petitioner told the BOP Lieutenant that "[he] said [he] was sorry." Id. After interviewing Petitioner, the BOP Lieutenant placed Petitioner in Administrative Detention pending final disposition of the charges. Id.

On August 5, 2015, Petitioner received notice that he would receive the next available hearing time before the DHO and was provided with a written copy of his rights regarding the hearing. Id. at 18, 20. On September 2, 2015, the DHO held Petitioner's disciplinary hearing. Id. at 22. Petitioner utilized his rights to a staff

3

representative and to call witnesses on his own behalf. Id. During the hearing, Petitioner's witness stated that:

> [During the incident] in the law library[,] . . . [t]he lady said for everyone to clear out and someone mocked her. The brother there (referring to [Petitioner]) mocked her and after that, I left out of the area. I believe it was just a joke gone bad.

Id. After the hearing, the DHO noted that "no documentary evidence was provided for consideration." Id. Ultimately, the DHO found that Petitioner was guilty of refusing to obey an order and of insolence toward a staff member, in violation of Prohibited Act Code § 307 and § 312, respectively. Id. at 23. Accordingly, the DHO imposed the following sanctions:

> Code 307
> Disciplinary Segregation – 30 Days
> Forfeiture of Statutory Good Time – 30 Days
> Comp 010 law O
> Loss of Privileges (Commissary) – 8 months
>
> Code 312
> Disciplinary Segregation – 30 Days
> Forfeiture of Statutory Good Time – 30 Days
> Comp 010 law O
> Loss of Privileges (Phone) – 8 months
> Loss of Privileges (Visit) – 8 months

Id. at 24.

The Hearing Report was prepared on September 3, 2015, and a copy was provided to Petitioner. Id. In this report, the DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. at 23. Specifically, the DHO stated that he had relied upon, *inter alia*, the Incident Report and the witness's testimony. Id. The report also included the reasons for Petitioner's sanctions. Id. To illustrate, the report provided that:

4

> [Petitioner's] refusal to obey the order of a staff member limited the ability of that staff member to effectively perform their routine duties. To allow inmates to engage in this type of behavior would create chaos and will not be tolerated in a correctional setting. [Petitioner's] insolent behavior directed at a staff member indicated a disrespect for authority figures. This action threatens the security and orderly running of the facility, as to allow inmates to be disrespectful would create chaos and severely limit staff's ability to control inmate behavior. Accordingly, Disciplinary Segregation and the Forfeiture of Statutory Good Time are sanctioned to punish [Petitioner] for his behavior, while the Loss of Privileges (Phone, Visit and Commissary) are sanctioned in an effort to deter him from it in the future. The DHO finds the charge for codes 307 and 312 to warrant the Forfeiture Statutory Good Time based on the offense being a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

Id. at 24.

On October 15, 2015, Petitioner filed his first administrative appeal of the DHO's decision. Id. at 6. However, Petitioner's appeal was rejected because Petitioner had filed his appeal on the incorrect form. Id. at 6-7. Therefore, Petitioner was instructed to resubmit his appeal on the proper form within ten days of the rejection, which Petitioner failed to do. Id. at 7. Instead, Petitioner appealed directly to the BOP General Counsel. Id. After Petitioner amended his appeal to apply with the required page limitations, the appeal was accepted. Id. Subsequently, the BOP General Counsel extended the time it was permitted to respond to Petitioner's appeal. Id. While the deadline was extended to January 30, 2016, the BOP General Counsel has not responded to Petitioner's appeal to date. Id.

### 2.   Incident Report, February 11, 2016

On February 11, 2016, another female staff member of the FCI in Allentown, Pennsylvania, drafted a second Incident Report regarding Petitioner. Id. at 26. The staff member reported that:

> [A]t approximately 11:45 AM, while I was walking down range in SHU, [the

> Special Housing Unit, Petitioner] called me over to come to his door. He asked me why I was so bundled up. I replied, "Because it is very cold outside." He said, "You're so big up there (pointing to his chest in reference to mine) that you shouldn't be cold." I said, "Excuse me, what did you say?" He repeated himself, and mimicked the same motion to the chest. I wrote down his name and his cell number, finished rounds in the range, and then left.

Id. The staff member then charged Petitioner with making sexual proposals or threats/insolence, in violation of Prohibited Act Code §§ 206 and 312. Id.

That same day, a copy of the Incident Report was provided to both Petitioner and the Unit Discipline Committee ("UDC"). Id. The UDC assigned a BOP Lieutenant to investigate the charges. Id. at 27. During the investigation, the BOP Lieutenant placed Petitioner in the Special Housing Unit ("SHU") pending final disposition of the charges. Id.

On February 12, 2016, Petitioner received notice that he would receive a hearing before the DHO and was provided with a written copy of his rights regarding the hearing. Id. at 29, 31-32. On February 24, 2016, the DHO held Petitioner's disciplinary hearing. Id. at 34. Petitioner utilized his right to a staff representative but waived his right to call witnesses on his own behalf. Id. During the hearing, Petitioner testified that:

> When [the staff member] was talking to [another inmate], I said why are you so bundled up and she said it was cold. . . . I then said that you're so big, you shouldn't be so cold. . . . I know it was wrong to say.

Id. After the hearing, the DHO noted that "no documentary evidence was provided for consideration." Id. Ultimately, the DHO found that Petitioner was guilty of making a sexual proposal or threat, in violation of Prohibited Act Code § 206. Id. at 35. Accordingly, the DHO imposed the following sanctions:

Code 206
Forfeiture of Statutory Good Time – 60 Days

6

>   Comp 010 Law O
>   Loss of Privileges (Phone) – 18 months
>   Loss of Privileges (Visit) – 18 months
>   Loss of Mattress (8am-8pm) – 1 month
>   Impound of Personal Property – 1 month

Id.

The Hearing Report was prepared on February 25, 2016, and a copy was provided to Petitioner. Id. In this report, the DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. Specifically, the DHO stated that he had relied upon, *inter alia*, the Incident Report and Petitioner's testimony. Id. The report also included the reasons for Petitioner's sanctions. Id. To illustrate, the report provided that:

> [Petitioner's] making a sexual gesture toward a staff member showed a total disrespect for authority and severely hampered the ability of that staff member to perform their duties in a correctional setting. Behavior of this nature will not be tolerated. This action threatens the security and orderly running of the facility, as to allow inmates to be disrespectful would create chaos and severely limit staff's ability to control inmate behavior. Accordingly, the Forfeiture of Statutory Good Time is sanctioned to punish [Petitioner] for his behavior, while the Loss of Privileges (Phone and Visit) in addition to the Loss of Mattress (8am-8pm) and the Impound of Personal Property are sanctioned in an effort to deter him from it in the future. The DHO finds the charge for code 206 to warrant the Forfeiture of Statutory Good Time based on the offense being a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

Id. at 36.

On March 4, 2016, Petitioner filed an administrative appeal of the DHO's decision. Id. at 7. However, Petitioner's appeal was initially denied on April 29, 2016. Id. Therefore, on May 18, 2016, Petitioner appealed the denial to the BOP General Counsel. Id. Subsequently, the BOP General Counsel extended the time it was permitted to respond to Petitioner's appeal. Id. While the deadline was extended to July

7

17, 2016, the BOP General Counsel has not responded to Petitioner's appeal to date. Id.

### III. DISCUSSION

#### A. The Petition[3]

In the Petition, Petitioner asserts four grounds for relief. ECF No. 1 at 5-6. First, Petitioner argues that his First Amendment right to pursue litigation in courts was denied when the BOP General Counsel failed to respond to his two appeals. Id. at 5. Second, Petitioner argues that prison officials retaliated against him for filing grievances, in violation of the First Amendment. Id. at 6. Third, Petitioner argues that his First Amendment right to pursue litigation in courts was violated when he was "not allowed . . . to file grievances in court." Id. Finally, Petitioner argues that his Fifth Amendment right to due process was violated when the BOP administration failed to respond to his two appeals. Id. Petitioner requests that the Court expunge the prison disciplinary proceedings and reinstate his good conduct time. Id. at 8.

#### B. Legal Standards

##### 1. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

---

[3] The undersigned notes that the Petition was filed *pro se* and will, therefore, liberally construe the arguments contained within. See McNair v. McCune, 527 F.2d 874, 875 (4th Cir. 1975) (holding that *pro se* petitions seeking federal habeas relief should be liberally construed and held to a less stringent standard).

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any

permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

**C.     Analysis of the Petition**

Respondent argues that the Petition is not cognizable under Section 2241 because Petitioner is serving a life sentence and any of his accrued good time credits will be used, not to reduce his sentence, but to impact his future parole eligibility. ECF No. 25 at 11-12. Thus, Respondent contends that the good time credits at issue would not necessarily reduce Petitioner's sentence, rendering Section 2241 inapplicable. Id. at 12. Nevertheless, for the sake of completeness, the undersigned will examine the merits of Petitioner's four grounds for relief.

**1.     First Ground for Relief**

Petitioner argues that his First Amendment right to pursue litigation in courts was denied when the BOP General Counsel failed to respond to his two appeals. ECF No. 1 at 5. Respondent argues that the General Counsel's failure to respond constituted a denial of the appeals and that, therefore, Petitioner exhausted his administrative remedies, allowing him to pursue litigation in courts. ECF No. 25 at 21.

Generally, an inmate may not bring an action concerning prison life under any federal law until he or she has exhausted all administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 676 (4th Cir. 2005). After an inmate files an administrative appeal to the BOP General Counsel, the General Counsel must respond within forty calendar days. 28 U.S.C. § 542.18. If the BOP General Counsel extends the deadline in which to file a response, the inmate must be informed of the extension in

11

writing. Id. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

In the present case, the undersigned finds that Petitioner's First Amendment right to pursue litigation in courts was not violated. Petitioner filed two administrative appeals with the BOP General Counsel. While the BOP General Counsel failed to respond to either appeal,[4] the failure did not prevent Petitioner from exhausting his administrative remedies and filing an action in court. To the contrary, the General Counsel's failure to respond constitutes a denial of Petitioner's appeals, allowing Petitioner to claim that he exhausted his administrative remedies and to file the instant Petition. Consequently, Petitioner's first ground for relief is without merit and should be denied.

### 2. Second Ground for Relief

Petitioner argues that prison officials retaliated against him for "filing grievances on staff misconduct," in violation of the First Amendment. ECF No. 1 at 6. Respondent argues that there was no retaliation and that the DHO's findings are supported by the available evidence. See ECF No. 25 at 13-20.

Initially, the undersigned notes that Petitioner fails to plead sufficient facts to state a retaliation claim.[5] A "plaintiff must allege specific facts supporting [a] claim of retaliation; bare assertions of retaliation [will not suffice]." McFadden v. Lewis, 517 F.

---

[4] The undersigned notes that Petitioner filed the instant Petition prematurely. Petitioner filed the instant Petition on June 29, 2016, even though the BOP General Counsel's deadline to respond to Petitioner's second appeal was July 17, 2016. Nevertheless, because the BOP General Counsel has not responded to Petitioner's second appeal to date, the undersigned will treat the Petition as ripe and proceed accordingly.

[5] The undersigned also notes that the proper vehicle for raising a retaliation claim is a civil rights action pursuant to 42 U.S.C. § 1983. See, e.g., Valenteen v. Driver, No. CIV. A. 1:08CV89, 2009 WL 304835, at *3 (N.D. W. Va. Feb. 6, 2009) (holding that a retaliation claim is cognizable under Section 1983, not Section 2241).

App'x 149, 150 (4th Cir. 2013). In this case, Petitioner summarily argues that prison staff filed the two Incident Reports against him in retaliation "for filing grievances on staff misconduct." ECF No. 1 at 6. However, Petitioner offers no facts, specific or otherwise, to support his argument. Therefore, Petitioner's retaliation claim fails.

To the extent that Petitioner is arguing that he is innocent of the charges against him, the undersigned finds that Petitioner's argument still fails. The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 457.

In the present case, the DHO found Petitioner guilty of multiple disciplinary infractions. Regarding the first Incident Report, the DHO found Petitioner guilty of refusing to obey an order and of insolence toward a staff member, in violation of Prohibited Act Code § 307 and § 312, respectively. When explaining his reasoning, the DHO stated that he found the staff member's statements in the Incident Report credible and relied on the Incident Report and an eye witness's testimony. Regarding the second Incident Report, the DHO found Petitioner guilty of making a sexual proposal or threat, in violation of Prohibited Act Code § 206. When explaining his reasoning, the DHO stated that he relied on the Incident Report and Petitioner's own testimony. After a review of the record, the undersigned finds that the evidence cited by the DHO indeed

supports his findings. As a result, the undersigned finds that the DHO's decision is supported by some evidence and that Petitioner's second ground for relief must fail.

### 3. Third Ground for Relief

Petitioner argues that his First Amendment right to pursue litigation in courts was violated when he was "not allowed . . . to file grievances in court." ECF No. 1 at 6. Petitioner does not explain how he was "now allow[ed]" to file grievances in court. To the extent that Petitioner is arguing that the BOP General Counsel's failure to respond to his two appeals prevented him from exhausting his administrative remedies, the undersigned has already found that the failure constituted a denial of the appeals, thus allowing Petitioner to claim that he exhausted all administrative remedies and to file the instant Petition. See Part III.C.1. To the extent that Petitioner is arguing that prison staff somehow prevented him from bringing an action in court, the undersigned finds that the proper vehicle for relief is a civil rights action pursuant to 42 U.S.C. § 1983. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (stating that a court may not convert habeas petitions into civil rights actions).

### 4. Fourth Ground for Relief

Petitioner argues that his Fifth Amendment right to due process was violated when the BOP administration failed to respond to his two appeals. ECF No. 1 at 6. Respondent argues that Petitioner received all of the due process to which he was entitled. ECF No. 25 at 13.

Initially, the undersigned notes that, as previously discussed, the BOP administration's failure to respond to Petitioner's two appeals did not amount to a violation of Petitioner's Constitutional rights. See Part III.C.1 (explaining that the BOP

14

General Counsel's failure to respond constituted a denial of the appeals, thus allowing Petitioner to claim that he exhausted his administrative remedies and to file the instant Petition). Therefore, the undersigned will analyze whether Petitioner's due process claim generally possesses any merit.

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the due process required during his two disciplinary proceedings for several reasons. First, Petitioner received written notice of the charges against him more than twenty-four hours before his two disciplinary hearings. Petitioner's first hearing was held on

September 2, 2015, and he was provided with his first Incident Report on July 30, 2015. Petitioner's second hearing was held on February 24, 2016, and he was provided with the second Incident Report on February 11, 2016. Therefore, Petitioner received a copy of the first and second Incident Reports more than twenty-four hours before the respective disciplinary hearings.

Second, after the disciplinary hearings, Petitioner was provided with a report of what had occurred during the two hearings, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Third, Petitioner was afforded the opportunity to call witnesses on his own behalf and to present a defense during both disciplinary hearings. Fourth, Petitioner was instructed of and utilized his right to a staff representative during both hearings. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings. In accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges. See 28 C.F.R. § 541.16(b). Consequently, the undersigned finds that, even if liberally construed and held to a less stringent standard due to Petitioner's *pro se* status, Petitioner's arguments lack merit and that the Petition as a whole should be denied.

## IV.   RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 24] be **GRANTED**, the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] and Motion for Defense *Pro Se* [ECF No. 23] be **DENIED** and the § 2241 proceeding be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 14th day of November, 2016.

/s/ Robert W. Trumble
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE